MANDEVILLE et al. v. MacDONALD et al.

(Circuit Court of Appeals, Second Circuit.    March 14, 1918.)

No. 176.

BROKERS &#x21D0;56(3)—RIGHT TO COMMISSION—CONSTRUCTION OF CONTRACT.

Plaintiffs, as brokers, sought a contract with defendants to assist in bringing about the purchase by defendants of the stock of a light company, for a commission of 5 per cent. No contract was then made, but some time later defendants told plaintiffs that, if they bought the stock, they would pay plaintiffs the commission. *Held,* that such agreement must be construed as one to pay a commission for the usual brokers' services resulting in a purchase, otherwise it would be without consideration, and that where plaintiffs wholly failed to bring about a sale and purchase, or even an interview between the parties, and abandoned the negotiations, they could not recover the commission where, several months afterward, defendants purchased the stock through independent negotiations of their own.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by Benjamin J. MacDonald and Daniel R. Bacon against Edward E. Mandeville, John J. Riordan, Jr., and George H. Stephenson. Judgment for plaintiffs, and defendants bring error. Reversed.

Writ of error to a judgment entered on May 29, 1917, upon the verdict of a jury. The action had originally been brought in the Supreme Court of New York for Orange county and was removed for diversity of citizenship. The complaint alleged that the plaintiffs were transacting business together as engineers and brokers, engaged in selling electric light and power companies in the state of New York and elsewhere, and the defendants were engaged together in business in seeking to acquire such corporations; that in the year 1913 the plaintiffs suggested to the defendants that they acquire the stock of the Orange County Lighting Company at Middletown, N. Y., and that the defendants directed the plaintiffs to ascertain whether the stock could be purchased, and agreed that if they acquired the control of the corporation they would pay the plaintiffs a commission of 5 per cent. on the amount paid; that thereafter the plaintiffs carried on certain negotiations with the lighting company, endeavored to arrange a meeting between the defendants and the president of the company, consulted and corresponded with the defendants touching the said purchase, and interviewed the president of the corporation and other persons connected with it; that the defendants bought the lighting company for $120,000, for which they demand their commission of $6,000. Upon the trial it developed that the defendant had paid $140,000 for the stock, and the complaint was amended by raising the ad damnum to $7,000 and interest. The answer contained only a general denial.

Upon the trial before a jury the plaintiff showed in substance as follows: That the defendants became interested in the purchase of three power companies in Orange county, N. Y., one at Port Jervis, another between Port Jervis and Middletown, and the third a lighting company at Middletown. It was the third company which this suit concerned. The Port Jervis company the defendants purchased some time in January, 1914. Before that time the plaintiffs had entered into negotiations with Purdy, who owned the lighting company, for its purchase, and had been told that he would entertain an offer, but would not put a price upon it. On November 12th the plaintiffs wrote a letter to the defendants, stating that if they were successful in securing the lighting company they should expect the usual commission of 5 per cent. on the purchase price. To this the defendants replied ambiguously, and no contract was closed. The defendants having bought the Port Jervis company, the plaintiffs, in March, 1914, went to Philadelphia to see them about their commissions. On March 25, 1914, on the way back from Philadelphia to New York, a talk took place between the plaintiffs and the defendants, in which the plaintiffs spoke of the lighting company, and the defendants said that, if they purchased the stock of that company, they would pay the plaintiffs a 5 per cent. commission. Plaintiffs answered that they would go to Middletown and have an interview with Purdy, who owned the company. The defendants' version was substantially the same except that they said they would pay the plaintiffs 5 per cent. commission, if Purdy delivered the stock for $120,000.

The plaintiffs had seen Purdy once or twice before the conversation in question. Thereafter Bacon had an interview with him on the 5th or 6th of April with reference to the purchase and endeavored to bring about an interview. He did not see him, however, after the 7th of April. On April 3d he wrote him asking for an interview, and was answered on April 4th that Purdy had no business matters to discuss with the defendants, and declined to go to New York; that he would be very glad to make their acquaintance at any time they came to see him in Middletown. Here the transactions between Purdy and the plaintiff ceased. In December, 1914, Riordan, one of the defendants, started independent negotiations with Purdy, which eventually resulted in a purchase at $140,000. The plaintiffs did not claim to have secured Purdy as a purchaser and did not base their demand upon the ordinary broker's contract

for commissions. They claimed, and the case was left to the jury on their claim, that the contract of March 25th was a promise to pay for services rendered after that conversation, at the defendants' direction to ascertain whether the corporation would sell the stock.

C. E. & S. M. Cuddeback, of Port Jervis, N. Y. (John B. Knox and George S. Graham, both of New York City, of counsel), for plaintiffs in error.

Bacon & Rorty, of Goshen, N. Y. (Albert Ritchie, of New York City, and P. O. Rorty, of Goshen, N. Y., of counsel), for defendants in error.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). The verdict establishes the plaintiffs' version, but not the sufficiency in law of the language used. Taken literally there was, of course, no consideration, so that the case resolves into whether the connotation of the words justified a finding of consideration. Normally the consideration was that usually undertaken by brokers, i. e., that they should bring the parties together; but this the plaintiffs expressly disclaim. Yet on their own showing the commission was payable only if the sale went through. In order to establish any consideration, therefore, the language must have implied a request for services which might not result in bringing the parties together. Further, the request for services might be satisfied by action which resulted in a complete failure by the plaintiffs in their negotiations, and which left the defendants nothing with which they could avail themselves when they came to an independent subsequent negotiation. This must be imputed to the defendants in the face of a proposal from the plaintiffs on November 12, 1913, of the usual broker's contract, dependent upon success.

Now, of course, a buyer might promise anything; he might agree to pay for failure as well as for success, but clearly he must say so pretty plainly, and here we have nothing but words which normally mean no more than the conventional agreement. We cannot agree that, with every allowance for the latitude of a jury in the interpretation of spoken words, these words admitted any such meaning. The implied request was for services which might result in bringing Purdy to terms. If the meaning was that the plaintiffs should be paid for services which ended in nothing, the contract must have so stated.

Judgment reversed, and new trial ordered.